### Petition for Naturalization of Mahamad OMAR.

United States District Court
S. D. New York.
June 7, 1957.

Elrich A. Eastman, New York City, for petitioner.

Howard I. Cohen, New York City, U. S. Naturalization Examiner.

LEVET, District Judge.

The above-named petitioner is a native and national of British Guiana, age 37, who has resided continuously in the United States since his lawful admission for permanent residence on April 17, 1953. The petition for naturalization was filed on August 6, 1956, under the provisions of Section 319(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1430.

The examiner objects to petitioner's admission upon the ground that (a) petitioner has not established that he has resided in marital union with his citizen spouse during the three years immediately preceding the date of his petition, in that he was allegedly separated from her for two weeks in April, 1956; and (b) petitioner has not established that he has been attached to the principles of the Constitution and is well disposed to the good order and happiness of the United States for the period required by law.

The facts in reference to the alleged "separation" between petitioner and his wife are in substance as follows: Petitioner was married on January 27, 1951. In the early part of 1956, at his wife's request, he was arrested for allegedly striking her and brought to Night Court. At the hearing the judge, in effect, directed that petitioner be separated from his wife for two weeks as a "cooling off" period for both of them. To this, the petitioner and his wife voluntarily agreed. During this period petitioner lived with his employer and visited his wife about five times. He also supplied her with funds. Both husband and wife say there was no intent of any permanent separation.

The facts in reference to the second problem amount to this: Sometime in November, 1950, while petitioner was at the residence of a certain dental mechanic by whom he was at one time employed, certain conversations arose while the employer and petitioner and another person, now deceased, were viewing television. The attempted assassination of President Harry S. Truman by Puerto Ricans had occurred a day or two before. According to the statement of the employer, petitioner in substance said: "It's too bad they didn't succeed." The employer conceded on cross-examination that he and the petitioner had had a dispute in reference to painting of the premises rented and occupied by petitioner at the employer's residence.

Aside from these complaints there is no evidence of lack of good moral character. On the other hand, the petitioner graduated from the General Course of Dental Technology, New York School of Mechanical Dentistry, on January 18, 1949. Favorable certificates and letters from other persons attest to petitioner's studious character, intelligence and moral character. In the Fall of 1955 and 1956, petitioner was a student in American Government at City College. The head of that department states: "I believe that I may, with confidence, say that Mr. Omar is known to me to be a person who would demonstrate his loyalty to his adopted land, the United States." The same person also stated: "Despite the opportunities which naturally were presented in such a course, and the provocations to voice critical views which a critic of our institutions or political philosophy would have encountered, Mr. Omar at no time expressed any views or made any statements which can lend credence to any suggestion of disloyalty, communist affiliation, or any subversive tendency." The applicant himself denied making any statement with reference to the attempt to assassinate President Truman. Two witnesses of apparently good repute testified on behalf of petitioner, stating in effect that petitioner was loyal to the United States.

Title 8 U.S.C.A. § 1430, among other things, provides that a person whose spouse is a citizen of the United States may be naturalized upon compliance with the requirements of said section if during the three years immediately preceding the date of filing his petition he had "been living in marital union with the citizen spouse." It is my opinion that petitioner's temporary absence from the marital domicile did not interrupt the marital union. As far as this court has been able to discover, there is no requirement that husband and wife remain in the same house each day to constitute a continuance of the marital union. For example, if the wife had stated that she wanted to take a two-week vacation in the country and the husband approved, or, on the other hand, if the husband had stated that he wished to go on a hunting and fishing trip for two weeks and the wife consented, certainly no one would contend that the

marital union was interrupted. I, therefore, conclude that there has been a compliance with the statute insofar as the element of marital union is concerned.

The court recognizes that the burden is upon the petitioner to show that he is attached to the principles of the Constitution and is well disposed to the good order and happiness of the United States. Title 8 U.S.C.A. § 1427 (a) (3). Here, the petitioner has, with the exception of the testimony adduced against him by a possible hostile witness, who was his employer and landlord, produced evidence sufficient, in my opinion, to sustain the burden of proving good character and that he is attached to the principles of the Constitution and is well disposed to the good order and happiness of the United States. This is borne out by certain witnesses, certain letters, and by my judgment of the petitioner himself in observing his testimony and in connection with other exhibits submitted by him.

The petition for naturalization is, therefore, granted.

The foregoing shall constitute Findings of Fact and Conclusions of Law.

It is so ordered.